**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ALAN R. BELL,                                )
        Petitioner,                       )          **Civil Action No. 08-147 Erie**
                                       )
        v.                                    )
                                       )          **Magistrate Judge Susan Paradise Baxter**
KENNETH CAMERON, et al.,        )
        Respondents.                  )

## OPINION AND ORDER[1]

Presently before the Court is Petitioner Alan R. Bell's Amended Petition For Writ of Habeas Corpus [ECF No. 27], which he filed pursuant to 28 U.S.C. § 2254. He contends that his judgment of sentence, which was imposed by the Court of Common Pleas of Crawford County on August 23, 2005, was obtained in violation of his Constitutional rights. Also pending is his Motion to Proceed [ECF No. 32], in which he seeks to clarify his some of his claims. That motion is granted.

## I.

### A.      Relevant Background

In or around October 2004, the Commonwealth charged Petitioner with 17 counts of Delivery of a Controlled Substance, 35 P.S. § 780-113(a)(30), and one count each of Possession of a Controlled Substance, 35 P.S. § 780-113(a)(16), Criminal Use Of Communication Facility, 18 Pa.C.S. § 7512(a), and Criminal Conspiracy, 18 Pa.C.S. § 903(a)(2), for alleged criminal activity that occurred between January 23, 2004, through August 21, 2004.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

In its charges against him, the Commonwealth alleged that during the dates in question it had used a Confidential Informant ("CI") to engage in controlled drug buys from Petitioner, several occurring at Petitioner's residence. Eventually, the CI introduced an undercover agent of the Commonwealth to Petitioner. The CI and agent together engaged in controlled drug buys from Petitioner; later, the agent and Petitioner conducted transactions without the CI. Illegal activities were alleged to have occurred in Venango, Crawford and Mercer Counties. During part of this period, the Commonwealth had Petitioner under surveillance and intercepted his telephone calls.

Harry Faber White, III, Esq., was appointed as Petitioner's defense counsel. On June 9, 2005, Petitioner pleaded guilty to three counts (Counts 5, 11 and 16) of Delivery of a Controlled Substance, 35 P.S. § 780-113(a)(30); the remaining charges were *nolle prossed*.

The court sentenced Petitioner on August 23, 2005. For Count 5, the first offense, the court imposed a sentence of 3-10 years' imprisonment. The sentences imposed for Counts 11 and 16 were the subject of much debate and discussion among the parties and the court, and became an issue on appeal. The Commonwealth contended that for the sentences to be imposed on those counts, the court was required to apply the enhancement set forth at 18 Pa.C.S. § 7508(a)(3)(ii), which provides: "If at the time of sentencing, the defendant has been convicted of another drug trafficking offense," the defendant shall be subject to a mandatory minimum sentence of 5 years' imprisonment. The definition of previous conviction is found at § 7508(a.1):

> **Previous conviction.** – For purposes of this section, it shall be deemed that a defendant has been convicted of another drug trafficking offense when the defendant has been convicted of another offense under Section 13(a)(14), (30) or (37) of The Controlled Substance, Drug, Device and Cosmetic Act, or of a similar offense under any statute of any state or the United States, whether or not judgment of sentence has been imposed concerning that offense.

Petitioner countered that the enhancement should not be applied to the sentences to be imposed on Counts 11 and 16 because his guilty plea on Count 5 arose from the same multiple count information. He argued that his conviction of subsequent counts under the same information could not be deemed recidivism subject to greater punishment under the sentencing statute. Subjecting him to a heavier penalty without a prior conviction, he contended, would undermine the "recidivist philosophy" upon which mandatory minimum sentencing provisions for subsequent offenders are based.

The sentencing court "fully agree[d] with [Petitioner's] position on this matter from a logical standpoint," but determined that it was bound under the Pennsylvania Supreme Court's decision in Commonwealth v. Vasquez, 753 A.2d 807 (Pa. 2000) to apply the enhancement to the sentences to be imposed on Counts 11 and 16. [See ECF No. 29-1 at pp. 26-28, Sentencing Court's Rule 1925 Opinion, Commonwealth v. Bell, CR 2004-1014, slip op. (C.P. Crawford Oct. 5, 2005)]. In that case, the court interpreted a companion subsection, 18 Pa.C.S. § 7508(a)(3)(i), which mandates an enhanced sentence for convictions involving less than ten grams of cocaine "if at the time of sentencing the defendant has been convicted of another drug trafficking offense[.]" Vasquez, 753 A.2d at 808-09. That subsection is identical to the one at issue in Petitioner's case, differing only as to the amount of cocaine possessed (under ten grams as opposed to ten to 100 hundred grams).

In Vasquez, the trial court had applied the enhancement to the defendant and imposed a sentence following the defendant's conviction on a two-count indictment and treated the defendant's first conviction as "another drug trafficking offense," triggering an enhanced sentence for the defendant's second conviction. Id. at 808. On appeal, the Superior Court affirmed in part and reversed in part, citing the objectives of the "recidivist philosophy."

<u>Commonwealth v. Vasquez</u>, 726 A.2d 396, 399-400 (Pa.Super. 1999).  It concluded that those objectives would not be advanced by imposition of an enhanced sentence to the second conviction of a two-count indictment.  The Pennsylvania Supreme Court reversed and analyzed the provision as follows:

> [E]ven if we were to conclude that these transactions could be construed as a single criminal episode, the statute at issue specifically focuses on a defendant's prior "convictions" at the time of sentencing, and makes no distinction between convictions that arise from a multiple count complaint, or a separate complaint. We are bound by the unambiguous language of the statute and cannot read language into it that simply does not appear.  1 Pa.C.S.A. § 1921(b).  The wording of the statute is unambiguous, and clearly requires that as long as *at the time of sentencing*, a defendant "has been convicted" of another qualifying "offense," the defendant shall receive the enhanced sentence.

<u>Vasquez</u>, 753 A.2d at 809 (emphasis in original).[2]

 In accordance with <u>Vasquez</u>, when sentencing Petitioner for Counts 11 and 16, the court imposed enhanced sentences of 5-10 years' incarceration as prescribed by § 7508(a)(3)(ii), to run concurrently with each other but consecutive to the sentence for Count 5, for a total aggregate sentence of 8-20 years' incarceration.

---

[2] In a concurring opinion, Justice Cappy discussed the legislative intent underlying the sentence:

> Like the dissent, I believe that the legislative enactment at issue ignores the recidivist philosophy of sentencing in favor of a mechanical application of enhanced penalties, which serves merely to add increased jail time at the whim of the prosecuting authority….I, like most jurists, advance the recidivist philosophy, as it best reflects the need for focusing on the individual defendant's capability for rehabilitation when imposing sentence.

> However, I am compelled to recognize that the legislature in its infinite wisdom has the authority to enact sentencing schemes that reflect penal philosophies other than the recidivist philosophy. As this court acknowledged in <u>Commonwealth v. Williams</u>, 539 Pa. 249, 652 A.2d 283, 285 n.1 (1994), there are other purposes to sentencing beyond individual deterrence and rehabilitation. Other recognized goals of sentencing include protection of society, general deterrence of criminal activity, and retribution.

<u>Vasquez</u>, 753 A.2d at 811.

Petitioner, through Attorney White, filed a direct appeal with the Superior Court in which he raised the following two claims:

> (1)     The trial court erred when it applied the enhanced sentencing provision of § 7508(3)(ii) when it sentenced him at Counts 11 and 16; and,
>
> (2)     The application of the enhanced sentencing provision to Petitioner violated his equal protection and due process rights.

[ECF No. 29-1 at pp. 2-17, *Brief Of Appellant* in <u>Commonwealth v. Bell</u>, 1632 WDA 2005 (Pa.Super)]. Giving Petitioner the benefit of the doubt, this Court will assume that he is advancing the same federal constitutional claims in the instant habeas proceeding that he advanced on direct appeal.

On June 5, 2006, the Superior Court issued an Opinion in which it rejected Petitioner's claims on the merits and affirmed his judgment of sentence. [ECF No. 29-3 at pp. 2-11, <u>Commonwealth v. Bell</u>, 1632 WDA 2005, slip op. (Pa.Super June 5, 2006)]. The Pennsylvania Supreme Court denied his petition for allowance of appeal on May 23, 2007. He did not seek a writ of certiorari.

On May 7, 2008, Petitioner filed a *pro se* motion under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.* Then, on May 14, 2008, he filed a *pro se* petition for writ of habeas corpus with this Court, which was held in abeyance while Petitioner pursued his state court remedies.

In the meantime, the PCRA Court appointed Daniel A. Durst, Esq., to represent Petitioner. On October 15, 2008, Attorney Durst filed an amended PCRA petition in which he raised the following claims:

> (1)     trial counsel was ineffective for not objecting that the Commonwealth failed to meet its burden of proof to allow the Court to impose the sentence enhancement at § 7508(a)(3)(ii); and,

5

      (2)      trial counsel was ineffective for failing to request a reduced sentence
              based on the doctrine of sentence manipulation or entrapment.

[ECF No. 29-4 at p. 10 (quoting Amended PCRA Petition)]. Giving Petitioner the benefit of the doubt, this Court shall assume that he is raising those same two claims in the instant habeas proceeding.

The PCRA Court presided over an evidentiary hearing at which Petitioner and his trial counsel, Attorney White, testified. On March 23, 2009, the court issued a Memorandum and Order in which it denied the Amended PCRA Petition. [ECF No. 29-4 at pp. 25-33, Commonwealth v. Bell, CR 2004-1014, slip op. (C.P. Crawford Mar. 23, 2009)].

Petitioner, through Attorney Durst, filed an appeal with the Superior Court in which he argued that the PCRA Court erred in denying each of his claims. [ECF No. 29-4 at pp. 2-23, *Appellant's Brief* in Commonwealth v. Bell, 657 WDA 2009 (Pa.Super.)]. On December 14, 2009, the Superior Court issued a Memorandum in which it denied Petitioner's claims on the merits and affirmed the PCRA Court's decision. Commonwealth v. Bell, 657 WDA 2009, slip op. (Pa.Super. Dec. 14, 2009), attached hereto as Exhibit A.

Pending now before this Court is Petitioner's Amended Habeas Petition [ECF No. 27], which he filed under the federal statute applicable to state prisoners, 28 U.S.C. §2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"). Under this statute, habeas relief is only available on the grounds that Petitioner's judgment of sentence was obtained in violation of his rights under the United States Constitution. 28 U.S.C. § 2254(a). Petitioner claims that it was, and in support he raises the following claims:

      Claim I      "Petitioner was tried and convicted by a court acting without
                     jurisdiction and Petitioner was thereby and as hereinafter described

denied due process in violation of his rights secured by the United States Constitutional and its amendments 1, 4, 5, 6, 8, 9, 14" because:

    A.      he was indicted by a grand jury outside the proper vicinage;

    B.      the information filed against him was void because it did not specify the applicability of mandatory minimum sentences;

    C.      the information filed against him was void because approval of the information by the prosecution violates the doctrine of separation of powers;

    D.      the prosecution engaged in "judge shopping";

    E.      counsel at all levels were ineffective per se for not enforcing petitioner's rights at trial and on appeal;

    F.      the mandatory sentencing statute violates his double jeopardy rights;

    G.      the mandatory sentencing statutes violates his due process rights.

Claim II      The assignment of a public defender unconstitutionally deprived him of the right to counsel of his choice;

Claim III      Petitioner was denied his rights to property and privacy because the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. § 5701 was violated;

Claim IV      Petitioner was denied due process and subjected to entrapment and "sentence manipulation" due to trial counsel's ineffectiveness in not objecting to the issue; and

Claim V      Petitioner was denied due process and his rights to confrontation because the prosecutor did not provide expert testimony as to "the fact and verification of seized substances being cocaine and their weights."

[ECF No. 27 at pp. 5-10].

Respondents have filed their Answer and the relevant state court records [ECF No. 29], and this case is now ripe for review.

### B. Discussion

#### 1. All Of the Claims Petitioner Did Not Raise To the Superior Court In Either His Direct or PCRA Appeal Are Procedurally Defaulted

In their Answer, Respondents assert that Petitioner is not entitled to federal habeas review on most of his claims because he did not properly present those claims, or "exhaust" them, before the Superior Court and, therefore, has now committed insurmountable procedural default. As previously stated, this Court shall give Petitioner the benefit of the doubt and assume that he is attempting to raise the same federal constitutional claims that he raised to the Superior Court on direct appeal (that the application of the enhanced sentencing provision violated his due process and equal protection rights) and in his PCRA appeal (that his trial counsel was ineffective for (1) not objecting that the Commonwealth failed to meets its burden of proof to allow the Court to impose the sentence enhancements at § 7508(a)(3)(ii), and (2) for failing to request a reduced sentence based on the doctrine of sentence manipulation or entrapment). With respect to all other claims that Petitioner raises in his Amended Habeas Petition, the Court agrees with Respondents that those claims are procedurally defaulted, for the reasons set forth below.

#### (a) The Exhaustion Requirement

A federal habeas court may not grant a state prisoner's petition for a writ of habeas corpus unless he has first presented his federal constitutional claims to the state courts. 28 U.S.C. § 2254(b)(1)(A). See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843 (1999); Lambert v.

Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). This "exhaustion" doctrine is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights.'" Cristin v. Brennan, 281 F.3d 404, 410 (3d Cir. 2002), quoting Coleman v. Thompson, 501 U.S. 722, 731 (1991). Exhaustion "addresses federalism and comity concerns by 'affording the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" Parker v. Kelchner, 429 F.3d 58, 61 (3d Cir. 2005), quoting Toulson v. Beyer, 987 F.2d 984, 986 (3d Cir. 1993), which quoted Vasquez v. Hillery, 474 U.S. 254, 257 (1986). The petitioner carries the burden of proving exhaustion of all available state remedies. See, e.g., Lambert, 134 F.3d at 513.

Importantly, in order to exhaust a claim, a petitioner must "fairly present" it *to each level of the state courts*. Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000), citing 28 U.S.C. § 2254(b); O'Sullivan, 526 U.S. at 848; Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996), abrogated on other grounds by Beard v. Kindler, — U.S. — , 130 S.Ct. 612 (2009). In Pennsylvania, this requirement means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition to the Common Pleas Court and then the Superior Court either on direct or PCRA appeal. See Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).

As set forth above, of the many federal constitutional claims that Petitioner raises before this Court, he failed to raise all but three of them to the Superior Court. Although, generally, a district court should require that a state prisoner return to state court to exhaust those claims that are not exhausted, see Crews v. Horn, 360 F.3d 146 (3d Cir. 2004), the court may "excuse" a petitioner's failure to exhaust as "futile" if it is clear that his claims are now barred from review

9

under state law.  Gray v. Netherland, 518 U.S. 152, 161 (1996).  Futility is established where "exhaustion is not possible because the state court would refuse on procedural grounds to hear the merits of the claims."  Lines, 208 F.3d at 164.

Here, requiring Petitioner to return to state court to attempt to litigate his unexhausted claims would be "futile" because he is foreclosed from doing so under Pennsylvania law.  The PCRA expressly limits the availability of relief and requires, with few exceptions not applicable here, that a post-conviction petition be filed within one year of the date a judgment becomes final.  42 Pa.C.S. § 9545(b)(1).  Since more than one year has passed since Petitioner's judgment of sentence became final, any PCRA petition that he might now attempt to file would be untimely and non-reviewable in the Pennsylvania courts.  Additionally, if Petitioner returned to state court to attempt to litigate the claims at issue in another PCRA petition, the state court likely would determine that Petitioner waived the claims.  See 42 Pa.C.S. § 9544(b).  Accordingly, it would be "futile" for Petitioner to return to state court and attempt to litigate his unexhausted habeas claims.

### (b)  Procedural Default

A finding by a district court that exhaustion is "futile" often results, as it does here, in a finding that the claims at issue are barred from federal habeas review.  The Court of Appeals for the Third Circuit has repeatedly instructed that "claims deemed exhausted because of a state procedural rule are deemed procedurally defaulted."  Lines, 208 F.3d at 160; Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).  Like the exhaustion doctrine, the doctrine of procedural default is "grounded in concerns of comity and federalism," Coleman, 501 U.S. at 730, and it bars federal habeas review of a claim whenever the petitioner has failed to raise it in compliance

with a state's procedural rules.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000).  The doctrine

essentially provides that if a federal habeas petitioner has either failed to present a federal claim

in the state courts or failed to comply with a state procedural rule, and such failure to present or

to comply would provide a basis for the state courts to decline to address the federal claim on the

merits, then such federal claims may not be addressed by the federal habeas court.  See, e.g.,

Wainwright v. Sykes, 433 U.S. 72 (1977); Lines, 208 F.3d at 162-69.

A petitioner whose constitutional claims are procedurally defaulted can overcome the

default, thereby allowing federal court review, if he can demonstrate "cause" for the default, *i.e.,*

that some objective factor "external to the defense" impeded efforts to comply with the state's

procedural rule, and "actual prejudice."  Coleman, 501 U.S. at 750; see also Murray v. Carrier,

477 U.S. 478, 488, 494 (1986).[3]

Petitioner points to no evidence and makes no allegation concerning cause for his default

or prejudice stemming therefrom, as is his burden.  Id.  To the extent that he would argue that his

appellate counsel's (Attorney White's) decision not to raise any of the claims at issue on direct

appeal amounts to "cause" for his default, that argument would fail for at least two separate

reasons.  First, an attorney's decision not to raise a claim on direct appeal is not the type of

conduct that satisfies the "cause" requirement.  As the Third Circuit Court has stated:

> Examples of "cause" that are "external to the defense" include interference by the
> state with the conduct of a defense or the previous unavailability of the factual or
> legal basis of a claim.  *Generally, "cause" cannot be based on the mere*

---

[3]        Another exception to the procedural default doctrine is the "miscarriage of justice" exception.  It provides
that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong
that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free
of nonharmless constitutional error[.]"  Schlup v. Delo, 513 U.S. 298, 316 (1995).  See also House v. Bell, 547 U.S.
518 (2006); Houck v. Stickman, 625 F.3d 88, 93-95 (3d Cir. 2010); Hubbard v. Pinchak, 378 F.3d 333, 339-41 (3d
Cir. 2004).  It only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation
has probably resulted in the conviction of one who is actually innocent.  Id.; Hubbard, 378 F.3d at 339-40.  It is not
applicable to Petitioner's case.

*inadvertence of the petitioner or petitioner's counsel to take an appeal.* "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default." [Murray v. Carrier, 477 U.S. at 486]. Indeed, in Coleman v. Thompson, 501 U.S. 722 [ ] (1991), the Court addressed . . . the effect of a litigant's inadvertent failure to take a timely appeal in a state collateral proceeding. The Court, applying Murray v. Carrier, concluded that an "ignorant or inadvertent procedural default" does not satisfy the cause element of cause and prejudice. Coleman, 501 U.S. at 752[.]

Cristin, 281 F.3d at 420 (emphasis added).

Second, while the Supreme Court has recognized that attorney error which amounts to ineffective assistance of counsel within the meaning of Strickland v. Washington, 466 U.S. 668 (1984) can constitute cause for relief from procedural default, Coleman, 501 U.S. at 753-54, in the instant case Petitioner may not rely on his appellate counsel's alleged ineffective assistance to avoid procedural default. Concerned with comity and the prospect of placing federal courts in the anomalous position of adjudicating unexhausted state claims, the Supreme Court has required strict exhaustion of state remedies, even when counsel has been responsible for some procedural default. See Murray, 477 U.S. at 488-89. Therefore, a claim of ineffective assistance of appellate counsel must be properly presented to the state courts as an independent claim before it may be used to establish procedural default. Id. at 489. This Petitioner failed to do.

Petitioner also cannot rely on any claim that his PCRA counsel's (Attorney Durst's) decision not to argue in the state post-conviction proceeding that Attorney White was ineffective for failing to raise any of the claims at issue on direct appeal establishes "cause" for his default. As previously explained, to qualify as "cause" for a procedural default, an attorney's ineffectiveness must rise to the level of a Sixth Amendment violation. Coleman, 501 U.S. at 753-54. Because Petitioner has no Sixth Amendment right to representation during his PCRA proceedings, any alleged ineffectiveness on Attorney Durst's part during that proceeding cannot

establish cause for the procedural default.  Cristin, 281 F.3d at 420, citing Commonwealth v.

Finley, 481 U.S. 551 (1987); Coleman, 510 U.S. at 752.

In conclusion, all of the claims that Petitioner has raised the Amended Habeas Petition

which he did not also raise before the Superior Court either on direct appeal or PCRA appeal are

procedurally defaulted and for that reason are denied.


### 2.      Petitioner Is Not Entitled to Habeas Relief On His Remaining Claims

#### (a)      Standard Of Review

The only claims of Petitioner's that this Court may review on the merits are the three

federal constitutional claims that he previously raised in his appeals to the Superior Court.

Because the Superior Court rejected each of those claims on the merits, they are governed by

AEDPA's standard of review, which modified "a federal habeas court's role in reviewing state

prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court

convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693

(2002).

In relevant part, as codified at 28 U.S.C. § 2254(d)(1), AEDPA restricts a federal court's

authority to grant relief when, as is the case here, the state court has "adjudicated on the merits"

the petitioner's federal constitutional claims.  In such cases, federal habeas relief may only be

granted when the state court's adjudication "resulted in a decision that was contrary to,[4] or

---

[4]       "A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'"  Lambert, 387 F.3d at 234, quoting Williams, 529 U.S. at 405-06.

13

involved an unreasonable application of,[5] clearly established Federal law, as determined by the Supreme Court of the United States[.]"  See also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lambert, 387 F.3d at 234.

As the Supreme Court recently observed:

> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  Cf. Felker v. Turpin, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  Jackson v. Virginia, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 786-87 (2011).  See also Wiggins v. Smith, 539 U.S. 510, 521 (2003) (it is not enough for a petitioner to show that the state court's adjudication of any of his claims was an "incorrect or erroneous" application of United States Supreme Court precedent); Waddington v. Sarausad, 555 U.S. 179, — , 127 S.Ct. 823, 831 (2009) (where it is the state court's application of governing federal law that is challenged, "the state court's decision must be shown to be not only erroneous, but objectively unreasonable.") (internal citations and quotations omitted); Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("The question under

---

[5]     "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular…case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'"  Lambert, 387 F.3d at 234, quoting Williams, 529 U.S. at 407.

AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold").

Under AEDPA, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington</u>, 131 S.Ct. at 786, quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004). This means that "a habeas court must determine what arguments or theories supported or [when the state court summarily disposes of a claim] could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the [United States Supreme] Court." <u>Id.</u>

### (b) Challenge to the Sentencing Statute

In his direct appeal, Petitioner contended that the imposition of § 7508(a)(3)(ii)'s enhancement provision for his sentencing on Counts 11 and 16 violated the constitutional guarantees of equal protection because "even though he has not had the theoretical benefits of penal discipline, is treated just as harshly as a Defendant who had committed an offense, been convicted, gone through a period of rehabilitation, and then re-offended." [ECF No. 29-1 at p. 16, *Brief Of Appellant*, 1632 WDA 2005 at p. 15].

In rejecting this claim, the Superior Court relied upon its decision in <u>Commonwealth v. Plass</u>, 636 A.2d 637 (Pa.Super. 1994), aff'd 652 A.2d 283 (Pa. 1994), which it declined to revisit. [<u>See</u> ECF No. 29-3 at p. 11, <u>Bell</u>, 1632 WDA 2005, slip op. at p. 11]. It disposed of the equal protection clause challenge to § 7508(a)(3)(ii)'s enhancement provision in <u>Plass</u>, and hence in Petitioner's case, as follows:

The classification established by the statute singles out drug offenders who have been convicted of a previous drug offense at the time of sentencing on the principal offense. This class is neither "suspect" – it has not been traditionally oppressed or discriminated against – nor is the classification designed to deprive the class of any fundamental right. Commonwealth v. Eicher, 413 Pa.Super. 235, 605 A.2d 337 (1992), alloc. denied, 533 Pa. 598, 617 A.2d 1272 (1992); see Commonwealth v. Wildermuth, 347 Pa.Super. 640, 501 A.2d 258 (1985) (mandatory sentencing law which classifies offender based on relative ages of victims not a suspect class). The classification will therefore survive equal protection scrutiny so long as it is not arbitrary and "rests upon some ground of difference having a fair and substantial relation to the object of the legislation so that all persons in similar circumstances shall be treated alike." Commonwealth v. Chmiel, 416 Pa.Super. 235, 242, 610 A.2d 1058, 1061 (1992), alloc. denied, 535 Pa. 613, 629 A.2d 1376 (1993) (quoting Moyer v. Phillips, 462 Pa. 395, 400-401, 341 A.2d 441, 443 (1975)).

Here, there is no question that § 7508, which provides tougher sentences for convicted drug offenders, is designed "to alleviate the ravages of drug trafficking and drug abuse in our society by subjecting convicted drug dealers to greater periods of confinement." Eicher, supra, 413 Pa.Super. at 266, 605 A.2d at 352. In Eicher, we rejected an equal protection challenge to § 7508 in the context of classifying an offender based on the weight of drugs involved in the offense. Id. Here, the claim is somewhat different, that is, [Defendant] contends by establishing a "look back" period which focuses on the date of sentencing, the legislature inadvertently allowed for a defendant's sentence to be determined not only by the severity of his crime, but also by administrative delay. He contends that prosecutors will abuse the "look back" period by delaying sentencing if an offender is near conviction on another drug offense.

We reject this argument. First, the legislature's goal, imposing harsher sentences for repeat offenders, is clearly served by establishing a scheme which takes any previous offenses, whenever they occur, into account. Moreover, merely because § 7508 does not fit the traditional recidivist scheme as explained by our Supreme Court in Dickerson,[6] supra, does not render it unconstitutional. Quite simply, the legislature has determined that deterrence and outright incapacitation of repeat offenders will better serve the societal interest in "alleviat[ing] the ravages of drug trafficking" than does the traditional rehabilitative purpose of other recidivist legislation. The date of conviction for the first offense, under this view, is

---

[6] The Defendant in Plass relied upon Commonwealth v. Dickerson, 621 A.2d 990 (Pa. 1993) to support his argument that the court should interpret § 7508(a)(3) "consistent with other recidivist statutes which embody the traditional notion that a conviction for a previous offense must have occurred prior to the commission of the second offense before a sentence enhancement may be imposed." Plass, 636 A.2d at 638-39. The Superior Court rejected this argument in Plass, id. at 639-41, and its reasoning would be confirmed by the Pennsylvania Supreme Court in subsequent decisions such as Vasquez, supra.

insignificant. Thus, § 7508 is reasonably designed to effectuate the purpose it seeks to achieve.

Second, we are unpersuaded that potential disparate treatment caused by administrative delay renders the statute unconstitutional. We have stated:

> [I]t is impossible to provide a sentencing code which covers every possible contingency that may arise in sentencing. It is better for consistency and uniformity of interpretation to be applied across the board for the vast majority of cases while a few defendants in infrequent cases receive a benefit, than to create a cumbersome, confusing and error prone system which breeds continued litigation.

[Commonwealth v. Eyster, 401 Pa.Super. 477, 488, 585 A.2d 1027, 1033 (Pa.Super. 1991)]. Here the enhanced sentencing provisions of § 7508 are easy to administer, and treat alike all defendants who at the time of sentencing have been convicted of a previous drug offense. The statute could not be more clear in intent or application; it is designed to incapacitate the drug offenders who infect our Commonwealth's communities. If, in an isolated case, the Commonwealth's conduct has caused imposition of an unfairly harsh sentence, the defendant may seek appropriate remedies by alleging and proving, among other things, prosecutorial misconduct.

Plass, 636 A.2d at 641.

The Court agrees with Respondents that there is no basis for this Court to disturb the Superior Court's adjudication of Petitioner's equal protection claim under AEDPA's limited standard of review. The Superior Court cited to and applied state cases which applied the appropriate equal protection review outlined in United States Supreme Court cases. See, e.g., Reed v. Reed, 404 U.S. 71, 75-76 (1971) (collecting cases). Therefore, it was not "contrary to" United States Supreme Court precedent. Nor can it be concluded that the Superior Court's adjudication was "an unreasonable application of" that precedent. See Williams, 529 U.S. at 406; Harrington, 131 S.Ct. at 786.

Petitioner also summarily argued in his direct appeal that his due process rights were violated. However, because his argument sounded solely under the Equal Protection Clause and

he did not present any authority in support of a due process claim, the Superior Court did not expressly address such a claim. [ECF No. 29-1 at p. 16, *Brief Of Appellant*, 1632 WDA 2005 at p. 15]. Before this Court, his due process claim amounts to no more than a disagreement with the state court's resolution of a state law issue: that is, he disagrees with the Pennsylvania Supreme Court's interpretation of § 7508(a)(3)'s enhancement provision and its refusal to read into it a "recidivist philosophy." [See Claim I.G of the Amended Habeas Petition, ECF No. 27 at p. 7]. This claim is in actuality a purely state law question of statutory construction and as such it is not subject to habeas review. 28 U.S.C. § 2254(a). This Court therefore would have no authority to grant relief even if we disagreed with the state court's construction of the statute. Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'").

### (c)     Ineffective Assistance Of Counsel

In his PCRA appeal to the Superior Court, Petitioner contended that his trial counsel, Attorney White, was ineffective for: (1) not objecting that the Commonwealth failed to meets its burden of proof to allow the Court to impose the sentence enhancement at § 7508(a)(3)(ii); and, (2) for failing to request a reduced sentence based on the doctrine of sentence entrapment.

The "clearly established Federal law" for AEDPA purposes in which to analyze Petitioner's claim of ineffective assistance is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, Petitioner first must show that Attorney White's representation fell below an objective standard of reasonableness." 466 U.S. at 688; see also Williams, 529 U.S. at 390-91. The law presumes that White was effective:

18

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel's was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Id. at 689 (internal citations and quotations omitted). The Third Circuit Court has explained that it is "only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997), quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989).

Strickland also requires Petitioner to demonstrate that he was prejudiced by White's alleged deficient performance. "This requires showing that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In other words, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

The Superior Court applied the correct legal standard when it evaluated Petitioner's ineffective assistance claims. Ex. A, Bell, 657 WDA 2009, slip op. at p. 6, citing Commonwealth v. Boyer, 962 A.2d 1213, 1215 (Pa. Super. 2008). See also Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999) (legal standard for evaluating ineffective assistance claims in a PCRA proceeding is the same as the federal Strickland standard). Therefore, its adjudication

of Petitioner's claims satisfies review under the "contrary to" clause of § 2254(d)(1).  See Williams, 529 U.S. at 406.

Thus, the only remaining questions for this Court to decide is whether the Superior Court's adjudication of either of Petitioner's ineffective assistance claims was an "unreasonable application of" Strickland.  28 U.S.C. § 2254(d)(1).  In conducting this analysis the Court is cognizant that:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.  The standards created by Strickland and § 2254(d) are both "highly deferential," [Strickland, 466 U.S.] at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [Knowles v. Mirzayance, 556 U.S. at —, 129 S.Ct. 1411, 1420 (2009)].  The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —, 129 S.Ct. at 1420.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 131 S.Ct. at 788.


### (1)  Proof of weight of the cocaine

Section 7508(a)(3)(ii)'s mandatory sentencing provisions are triggered "when the aggregate weight of the compound or mixture containing the substance involved is at least ten grams and less than 100 grams[.]"  Its applicability is to be determined at the time of sentencing, and the Petitioner is correct that the Commonwealth had the burden of proving at that time the weight of cocaine at issue for each count.  18 Pa.C.S. § 7508(b).  When a case has been tried, the sentencing court is permitted to consider evidence presented at trial and shall afford the Commonwealth and the defendant an opportunity to present necessary additional evidence.  Id.

The sentencing court shall then decide by a preponderance of the evidence if the aggregate weight of the controlled substance was between 10 grams and less than 100 grams. If it is, then the defendant is subject to the mandatory sentencing provisions set forth in § 7508(a)(3)(ii).

Petitioner argues that Attorney White was ineffective because he failed to assure that the Commonwealth fulfilled its obligation to prove the weight of the cocaine at issue for each of the three counts (Counts 5, 11, and 16). The problem with his argument is that it simply was not contested that the amount of cocaine quantities at issue exceeded ten grams for each count. The transcript of his plea hearing reveals that is was undisputed that each delivery was in excess of 10 grams of cocaine and that Petitioner was advised that as a result he would be subject to sentencing under § 7508(a)(3)(ii). [ECF No. 29-4 at p. 28, citing 6/9/05 Plea Hr'g Tr. at pp. 26-27]. At the sentencing hearing, Attorney White pointed out that the three deliveries at issue for Counts 5, 11, and 16 involved the following weights: 11.8 grams, 15.4 grams, and 13.3 grams. As the PCRA Court concluded, this was done because: "It was obvious what the weights were on these three counts. The weights were agreed to and stated in the presence of [Petitioner]." [ECF No. 29-4 at p. 28, citing 8/23/05 Sentencing Hr'g Tr. at p. 7].

Thus, while Petitioner is technically correct that the Commonwealth is required to prove the weights of the controlled substance at the time of sentencing, he has not demonstrated that it was objectively unreasonable for Attorney White to forgo insisting that the Commonwealth do so since the weights were discussed and uncontested. Moreover, Petitioner has not demonstrated that the deliveries at issue in Counts 5, 11, or 16 involved weights of less than 10 grams, which would have made § 7508(a)(3)(ii) inapplicable. Therefore, he has not shown that he was prejudiced by White's alleged ineffectiveness. Most importantly, however, he has not shown that the Superior Court's adjudication of this claim, Ex. A, Bell, 657 WDA 2009, slip op. at pp. 6-8,

was an objectively unreasonable application of <u>Strickland</u>, and for that reason this claim must be

denied.

### (2)    Sentence manipulation

Petitioner claims that White was ineffective for not requesting a sentence reduction based

on the theory of manipulation.  The Superior Court has explained this theory as follows:

> Sentencing manipulation occurs when "a defendant, although predisposed to
> commit a minor or lesser offense, is entrapped in committing a greater offense
> subject to greater punishment." [<u>Commonwealth v. Petzold</u>, 701 A.2d 1363, 1365
> (Pa.Super. 1997)] (citing <u>United States v. Staufer</u>, 38 F.3d 1103, 1106 (9th Cir.
> 1994)).  It often is asserted in narcotics matters, typically reverse sting cases, in
> which government agents determine the amount of drugs a target will purchase.
> <u>Id.</u>, 701 A.2d at 1365.  Sentencing entrapment or manipulation is similar to
> traditional notions of entrapment *in that it requires extraordinary misconduct by
> the government*.  <u>Id.</u>, 701 A.2d at 1365 (citing <u>United States v. Egemonye</u>, 62
> F.3d 425 (1st Cir. 1995)).  However, it differs from classic entrapment in that it is
> not a complete defense to criminal charges and, therefore, cannot serve as a basis
> for acquittal.  Instead, it provides a convicted defendant the opportunity for a
> reduced sentence, typically in the form of a downward departure from the
> sentencing guidelines.  <u>Id.</u>, 701 A.2d at 1365 (citing <u>United States v. McClelland</u>,
> 72 F.3d 717 (9th Cir. 1995), cert. denied, 517 U.S. 1148, 116 S.Ct. 1448, 134
> L.Ed.2d 567 (1996)).  It also can be used to exclude one of several criminal
> transactions included in a sentencing scheme.  <u>Id.</u>, 701 A.2d at 1365 (citing
> [<u>United States v. Connell</u>, 960 F.2d 191 (1st Cir. 1992)]).  It may even provide
> relief from a mandatory sentence.  <u>Id.</u>, 701 A.2d at 1365.

> Additionally, we noted in <u>Petzold</u> that:

>> The benefits of reverse sting operations, *i.e.*, ferreting out those
>> who are ready, willing and able to engage in crime, must be
>> balanced against the danger of granting law enforcement officials
>> unlimited power to define the scope of criminal culpability in a
>> given case.  The fact that a single officer in the field can determine
>> the amount of drugs in a case, and, therefore, the length of
>> sentence for a defendant, is a troubling scenario.  Such awesome
>> power cannot go unchecked.

> <u>Id.</u>, 701 A.2d at 1366.
> ---

> *Simply put, sentencing entrapment or manipulation is difficult to prove, it is not established "simply by showing that the idea originated with the government or that the conduct was encouraged by it ... or that the crime was prolonged beyond the first criminal act ... or exceeded in degree or kind what the defendant had done before." Petzold, 701 A.2d at 1366 (citation omitted).*

Commonwealth v. Paul, 925 A.2d 825, 830 -31 (Pa.Super. 2007) (emphasis added).

Petitioner contends that the police conduct in his case became outrageous because he was only able to finance his growing habit due to the repeated drug buys by the CI and the undercover agent, and because the Commonwealth ignored "its humanitarian duty to make an arrest promptly" instead of inducing him to became heavily addicted. [ECF No. 27 at p. 9]. The Superior Court rejected this argument because Petitioner did not provide a persuasive legal or factual analysis showing that the police conduct in this matter constituted over-involvement or outrageous misconduct. It also concluded that Petitioner failed to demonstrate how the police inappropriately manipulated the drug quantities with respect to Counts 5, 11, and 16, which were the only counts upon which he was sentenced. Ex. A, Bell, 657 WDA 2009, slip op. at pp. 9-10.

It cannot be said that no "fairminded jurist" could agree with the Superior Court's adjudication of this claim. Harrington, 131 S.Ct. at 785-86. Although it is true that the Commonwealth arranged many purchases of illegal drugs from Petitioner and either established the weight or the price which would have determined the weight, it also is clear that Petitioner was predisposed to selling drugs. Moreover, the fact is that the amounts for the only counts at issue were between 11 and 16 grams, which made the sentencing for those counts fall within the middle range of the mandatory minimum sentencing requirements, 18 Pa.C.S. § 7508(a)(3)(ii), and were far short of the higher rangers which could have resulted from purchases of 100 grams or more of cocaine pursuant to § 7508(a)(3)(iii). Finally, as the PCRA Court observed, "common sense and experience reminds me that it is standard in drug prosecutions where there

are several targets, immediate arrests never occur." [ECF No. 29-4 at p. 30, <u>Bell</u>, CR No. 1014-2004, slip op. at 6).

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Id.</u> Applying those standards here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied. Accordingly, a certificate of appealability is denied.


### II.

For the foregoing reasons, the Motion to Proceed [ECF No. 32], in which Petitioner clarifies some of his claims, is granted. The Amended Petition For Writ of Habeas Corpus [ECF No. 27] is denied and a certificate of appealability is denied.

An appropriate Order follows.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  February 25, 2011

cc:     counsel of record and
        Alan R. Bell
        GJ7161
        SCI Cresson
        PO Box A
        Cresson, PA 16699-0001

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALAN R. BELL,** | ) | |
| **Petitioner,** | ) | **Civil Action No. 08-147 Erie** |
| | ) | |
| **v.** | ) | |
| | ) | **Magistrate Judge Susan Paradise Baxter** |
| **KENNETH CAMERON, et al.,** | ) | |
| **Respondents.** | ) | |

## ORDER

AND NOW, this 25th day of February, 2011;

IT IS HEREBY ORDERED that the Motion to Proceed [ECF No. 32] is GRANTED.  IT

IS FURTHER ORDERED that the Amended Petition For Writ Of Habeas Corpus [ECF No. 27]

is DENIED and that a certificate of appealability is DENIED.  The Clerk of Courts is directed to

close this case.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  February 28, 2011

cc:     counsel of record and
        Alan R. Bell
        GJ7161
        SCI Cresson
        PO Box A
        Cresson, PA 16699-0001